KAREN P. HEWITT
United States Attorney
CARLOS ARGUELLO
Assistant U.S. Attorney
California State Bar No. 157162
Federal Office Building
880 Front Street, Room 6293
San Diego, California  92101-8800
Telephone: (619) 557-6252
Facsimile: (619) 235-2757

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08cr0303BEN |
|---|---|---|
| Plaintiff, | ) | DATE: June 16, 2008<br>TIME: 2:00 p.m. |
| v. | ) | |
| | ) | UNITED STATES' RESPONSE AND<br>OPPOSITION TO DEFENDANT'S<br>MOTIONS TO: |
| GUADALUPE AISPURO, | ) | |
| Defendant. | ) | 1) DISMISS INDICTMENT;<br>2) SUPPRESS EVIDENCE;<br>3) SUPPRESS STATEMENTS;<br>4) COMPEL DISCOVERY; AND<br>5) FILE FURTHER MOTIONS. |
| | ) | TOGETHER WITH UNITED STATES'<br>MOTION FOR RECIPROCAL<br>DISCOVERY |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Carlos Arguello, Assistant United States Attorney, and hereby files its response and opposition to Defendant's above-referenced motions.  This response is based upon the files and records of this case, together with the attached statement of facts, memorandum of points and authorities and the United States' motion for reciprocal discovery.

I.

**STATEMENT OF FACTS**

A.    **PRIMARY INSPECTION AT THE WESTMORLAND CHECKPOINT**

On Wednesday, January 9, 2008, at approximately 3:20 a.m., Defendant Juan Alonso Rojo-Castaneda ("Defendant") drove a grey Kenworth tractor trailer bearing California license plates to the fully operational, United States Border Patrol checkpoint on Highway 86 in Westmorland, California. Defendant was hauling an approximately 53-foot semi-trailer. Defendant was the registered owner and sole occupant of the tractor trailer.

United States Border Patrol Agent Freddy Carretero was working at the primary inspection area at the checkpoint when Defendant's tractor trailer approached. The agent asked Defendant routine inspection questions. Defendant, age 32, stated he was a lawful permanent resident of the United States and presented his permanent resident alien card.

The agent then asked Defendant what type of cargo he was transporting. Defendant responded that the trailer was empty and that he was driving to Bakersfield. During this brief questioning, Agent Carretero observed that Defendant appeared extremely nervous. The agent noticed that Defendant seemed fidgety, avoided eye contact, appeared eager to answer questions, and asked to be allowed to continue on his way.

While Agent Carretero spoke with Defendant at the primary area, Border Patrol Agent Vega, a canine handler, was working in the pre-primary inspection area at the checkpoint with his assigned canine. Agent Vega noticed the tractor trailer and had his canine conduct a sniff of both the tractor trailer and semi-

trailer.  His assigned canine Hoby alerted to the rear doors of
the semi-trailer.  At this point, Agent Vega signaled to Agent
Carretero to refer Defendant and his truck to the secondary
inspection area.  As a result, Defendant was referred to the
secondary location.

**B.   <u>SECONDARY INSPECTION AT THE CHECKPOINT</u>**

In the secondary inspection area, Agent Vega approached
Defendant and asked him what he had in the semi-trailer.
Defendant replied that it was empty.  Agent Vega then asked
Defendant if he would consent to a search of the semi-trailer.
Defendant consented to a search and opened the rear doors of the
semi-trailer.  Agent Vega looked inside the semi-trailer and saw
several plastic crates double-stacked together.  Within moments,
the canine alerted to the crates.

Border Patrol agents eventually removed eighteen (18) bales
of packages from within two crates located at the front end of the
semi-trailer.  The contents of one of the bales field-tested
positive for marijuana.  The gross weight of all the packages was
168 kilograms or 369 pounds.  Agents subsequently placed Defendant
under arrest for the illegal possession of narcotics.

**C.   <u>DEFENDANT'S POST-ARREST STATEMENTS</u>**

United States Drug Enforcement Administration Special Agent
Richard Slattery and Task Force Officer Pompeyo Tabarez assumed
the investigation of this case.  Officer Tabarez advised Defendant
of his Miranda rights in the Spanish language with Special Agent
Slattery serving as a witness.  Defendant stated he understood his
rights and agreed to speak with the agents.

1    Defendant denied knowledge of the marijuana found in his

2    semi-trailer.  Defendant confirmed he owned the tractor trailer.

3    He told the agents that he worked for Juarez Brothers Trucking in

4    Bakersfield, California.  He gave the name of David Hernandez as

5    the dispatcher.  Defendant claimed that on January 8, 2008, the

6    day before his arrest, he delivered a load of carrots from

7    Grimmway Farms in Bakersfield to the El Centro Cold Storage

8    warehouse in El Centro, California.

9    Defendant stated that his semi-trailer was unloaded at the

10    storage warehouse at approximately 11:45 p.m.  Thereafter, a

11    forklift operator named "El Gordo" loaded his semi-trailer with

12    empty plastic bins.  Defendant remained inside the tractor trailer

13    during that time and could not see "El Gordo" loading his trailer.

14    After leaving the storage warehouse, Defendant drove his

15    tractor trailer to Westmorland.  Defendant claimed he intended to

16    drive north to Bakersfield in order to deliver the plastic bins to

17    Grimmway Farms.  Defendant drove a distance, took a short nap, and

18    then proceeded to the Westmorland checkpoint.

19    **D.    <u>FOLLOW-UP INVESTIGATION</u>**

20    Special Agent Slattery conducted follow-up investigation

21    based on Defendant's statements.  He did the following:

22        1.    Agent Slattery spoke with Richard Hiura, Director of

23            Processing and Packaging for River Ranch Fresh Foods in

24            El Centro, California.  Mr. Hiura confirmed that River

25            Ranch received a shipment of carrots from Grimmway Farms

26            but it was on January 9, 2008, and the shipment arrived

27            at approximately 11:15 a.m.  He stated shipments of

28            carrots only arrive in the morning hours and not in the

4

evening.  Mr. Hiura also added no such person by the name of "El Gordo" worked at their facility.

2.   Agent Slattery obtained a bill of lading from River Ranch Fresh Foods which stated that the January 9, 2008 shipment of carrots was delivered by a driver named Gilbert Ramos and not Defendant.

3.   Agent Slattery was informed by River Ranch representatives that they do not load bins into trailers as described by Defendant.  Moreover, River Ranch uses its own semi-trailers to transport carrots, not the personal trailers of the drivers.

4.   Agent Slattery spoke with David Hernandez, a dispatcher employed by Juarez Brothers Trucking in Bakersfield, California.  Mr. Hernandez verified Defendant worked for them but had not made any deliveries for them since November 2007.

**E.   THE INDICTMENT**

On February 6, 2008, a grand jury returned an indictment against Defendant charging him with one count of possessing 100 kilograms or more of marijuana with intent to distribute in violation of Title 21, United States Code, Section 841(a)(1).

**II.**

**POINTS AND AUTHORITIES**

**A.   THE GRAND JURY INSTRUCTIONS WERE LEGALLY PERMISSIBLE, AND THE INDICTMENT SHOULD NOT BE DISMISSED**

Defendant moves to dismiss the indictment based on the instructions give to the Grand Jury.  Defendant's briefing is identical in all relevant aspects to the briefing submitted in

<u>United States v. Martinez-Covarrubias</u>, Case No. 07CR0491-BTM, and <u>United States v. Jimenez-Bermudez</u>, 07CR1372-JAH. Accordingly, the Government explicitly incorporates by reference the briefing on this issue that was filed in <u>Martinez-Covarrubias</u> and <u>Jimenez-Bermudez</u>.

This motion has been denied by each court that has considered it, and should also be denied in this case. If the Court would like further briefing on this issue, the Government would request leave to file a supplemental brief.

**B.    <u>THE SEARCH OF DEFENDANT'S SEMI-TRAILER WAS REASONABLE</u>**

**1.    <u>Defendant's Referral to Secondary Inspection was Lawful</u>**

The Supreme Court has held that a car may be stopped at a permanent checkpoint for brief immigration inspections and the car and occupants referred to secondary for further questioning without "any individualized suspicion." <u>United States v. Martinez-Fuerte</u>, 428 U.S. 543, 562 (1976); <u>United States v. Barnett</u>, 935 F.2d 178, 180-82 (9th Cir. 1991).

Further, in <u>United States v. Taylor</u>, 934 F.2d 218, 220 (9th Cir. 1991), the Ninth Circuit held that where inspection at a Border Patrol checkpoint established the motorist's identity and lawful status, *absent probable cause or consent*, some minimal, articulable suspicion is necessary to justify a brief, further delay for a dog sniff. <u>Taylor</u>, 934 F.2d at 221. Nonetheless, a unanimous panel found that the Border Patrol agent's observation that the motorist "became increasingly nervous and uneasy at the end of the initial check for aliens constituted minimal, articulable suspicion and therefore justified the brief further delay." <u>Id.</u>; see also <u>United States v. Preciado-Robles</u>, 964 F.2d

882, 884 (9th Cir. 1992) (brief detention following valid immigration questioning was permissible where defendants were "visibly nervous" during questioning).

While the agents did not need individualized suspicion to refer Defendant to secondary inspection, the fact that the narcotics canine alerted to the semi-trailer while it was at the primary inspection area and the fact Defendant appeared extremely nervous and eager to continue on his trip certainly provided such suspicion.

2.    **Probable Cause Supported the Search of the Semi-Trailer**

A search at a checkpoint must be justified by probable cause or consent.  <u>Martinez-Fuerte</u>, 428 U.S. at 567.    In the instant case, the certified detector dog alerted to defendant's truck at pre-primary inspection.  The use of a detector dog to conduct a "sniff" of a vehicle is not a search which requires either probable cause or consent.  See <u>United States v. Place</u>, 462 U.S. 696 , 707 (1983); <u>see also</u> <u>United States v. Lingenfelter</u>, 997 F.2d 632, 638 (9th Cir. 1993).  ("(C)onsent is not required for a dog sniff of a lawfully detained vehicle".)

The question of whether there is probable cause to conduct a search of a vehicle requires determining "whether the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found."  <u>United States v. Ornelas</u>, 517 U.S. 690, 696 (1996).

Here, probable cause existed to justify the search of Defendant's truck.

Primarily, a certified detector dog alerted twice to the cargo area of the truck.  A canine sniff alone can constitute

7

probable cause if the reliability of the dog is established. Lingenfelter, 997 F.2d at. 639;("A canine sniff alone can supply the probable cause necessary for issuing a search warrant if the application for the warrant establishes the dog's reliability."); Dovali-Avila, 895 F.2d at 207 ("a 'dog alert' is sufficient to create probable cause to conduct a warrantless vehicle search."); Massie 65 F.3d at 849 (dog alert on suitcase and trunk of vehicle at Border Patrol checkpoint afforded probable cause for the search).

Secondarily, the facts Defendant appeared extremely nervous and was traveling northbound on a route commonly traveled by those involved in both drug and alien smuggling near the U.S./Mexican border can be taken into consideration by agents.

**3.    Defendant Consented to the Search of His Semi-Trailer**

A search conducted pursuant to valid consent constitutes a well recognized exception to both the warrant and probable cause requirements of the Fourth Amendment.  See Schneckloth v. Bustamonte, 412 U.S. 218 (1973).  A search based on consent allows any evidence discovered during that search to be admitted, provided that the consent is freely given.

As the Court recognized in Schneckloth v. Bustamonte, the question "whether a consent to search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances."  Under this totality of circumstances approach, courts generally find a lack of consent only where there has been a finding that explicit or implicit coercion was brought to bear on the consenting party.  See Schneckloth v. Bustamonte, 412 U.S.

1   at 228.

2      Here, agents asked for and received consent to search the

3   semi-trailer.  The Ninth Circuit, in approving a consent search at

4   the San Clemente, California checkpoint, has squarely held that

5   "valid consent may be given while detained."  United States v.

6   Ramirez-Jiminez, 967 F.2d 1321, 1324 (9th Cir. 1992).

7      Additionally, agents need no level of suspicion to ask for

8   Defendant's consent.  See United States v. Taylor, 934 F.2d 218,

9   220 (9th Cir. 1991); see also Martinez-Fuerte, 428 U.S. at 567

10  ("Checkpoint searches are constitutional only if justified by

11  consent or probable cause to search") (emphasis added).

12

13  C.   **DEFENDANT'S STATEMENTS ARE ADMISSIBLE**

14       1.   **Defendant's Waiver Of Rights Was**
              **Knowing, Voluntary, And Intelligent**

15      Defendant's statements were voluntary and made after he was

16  advised of his Miranda rights and waived them.  Before the

17  interview began, Defendant was read his Miranda rights in Spanish

18  from an advice of rights form.  After stating that he understood

19  his rights, Defendant waived his rights and agreed to be

20  interviewed without an attorney present.

21      It is uncontested that custodial interrogation designed to

22  elicit incriminating statements must be preceded by explicit

23  procedural safeguards.  Miranda v. Arizona, 384 U.S. 436 (1966).

24  Whether there has been an intelligent Miranda waiver by Defendant

25  depends upon the particular facts in the case, including the

26  background, experience, and conduct of the accused.  Brewer v.

27  Williams, 430 U.S. 387, 403 (1977);  United States v. Rodriquez-

28  Gastelum, 569 F.2d 482, 483 (9th Cir.) cert. denied, 436 U.S. 919

                                  9

1    (1978).

2        Statements taken in violation of the <u>Miranda</u> safeguards are

3    ordinarily inadmissible.    <u>See</u>  <u>United States v. Heldt</u>, 745 F.2d

4    1275 (9th Cir. 1984).    The burden is on the Government to

5    establish voluntariness by a preponderance of the evidence.  <u>Lego</u>

6    <u>v. Twomey</u>, 404 U.S. 477, 488-489 (1972).

7        While it is true that this burden rests on the Government,

8    the Court must still consider what effect the actions of the

9    Government agents had upon a defendant.    The focus of the inquiry

10   is on the defendant's state of mind.    <u>See</u> Title 18, United States

11   Code, Section 3501(b).    Therefore, the Court should consider

12   defendant's testimony, or his failure to give it, before deciding

13   this issue.

14       A statement is considered voluntary if the totality of the

15   surrounding circumstances indicates that it was the product of

16   free and rational choice.    <u>Culombe v. Connecticut</u>, 367 U.S. 568,

17   602 (1961).  The voluntariness of a Fifth Amendment waiver depends

18   "on the absence of police overreaching, not on 'free choice' in

19   any broader sense of the word."   <u>Colorado v. Connelly</u>, 479 U.S.

20   157, 170 (1986).  In examining the totality of the circumstances,

21   the Court must examine the personal characteristics of defendant

22   together with the details of the interrogation.    <u>See</u> <u>Schneckloth</u>

23   <u>v. Bustamonte</u>, 412 U.S. 218, 226 (1973).    Relevant personal

24   characteristics of defendant include his age, intelligence,

25   educational level, knowledge of rights, as well as his physical,

26   mental, or emotional condition.    <u>See</u> <u>Brewer v. Williams</u>, 430 U.S.

27   387, 403 (1977).

28

The testimony would establish that Defendant was not subjected to outrageous conduct such as physical intimidation, torture, coercion, or threats.  Rather, Defendant had his <u>Miranda</u> rights properly read to him in his native language.  Thereafter, Defendant acknowledged and waived his rights.

The Government's conduct was entirely proper and this Court should not suppress any statements made by Defendant.

**D.    COMPEL DISCOVERY**

The Government has produced approximately fifty-five (55) pages of discovery.  Additional discovery will be produced as it is available.  At this time, the Government is awaiting a laboratory analysis report from the Drug Enforcement Administration, Department of Motor Vehicle documents, photographs taken on the day of arrest, cellular phone records, and further Immigration and Customs Enforcement reports which will be provided to Defendant once they have been received.

The discovery produced is in excess of that required by Rule 16 of the Federal Rules of Criminal Procedure and the Jencks Act (now covered by Rule 26.2 of the Federal Rules of Criminal Procedure).  As to the physical evidence, the Government will make it available for viewing by defense counsel at a mutually convenient time and place.

As to exculpatory information, the Government is well aware of its obligation under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) and will comply.

The Government will provide a list of witnesses in its trial memorandum.  The grand jury transcript of any person who will testify at trial will also be produced.

The Government has provided and will continue to provide information within its possession or control pertaining to the prior criminal history of the Defendant. Evidence of other acts or crimes by the Defendant similar to this marijuana possession case will be provided. The Government intends to seek permission to introduce this evidence under Fed. R. Evid. 404(b) at trial and hereby formally provides written notice to Defendant. The Government also intends to seek permission to impeach Defendant with any felony conviction he may have under Fed. R. Evid. 609(a)(1) if he testifies at trial.

The Government will produce the reports of any experts that it intends to use in its case-in-chief at trial or are material to the preparation of the defense.

In view of the above-stated position of the Government concerning discovery, it is respectfully requested that no orders compelling specific discovery by the Government be made at this time. The Government also respectfully requests reciprocal discovery of the Defendant. If and when individual problems arise which cannot be resolved between counsel for Defendant and the Government, the matters can be submitted to the Court for decision.

**E.    FILE FURTHER MOTIONS**

The Government does not oppose Defendant's request to file further motions if based on newly acquired discovery.

///

///

///

///

**III.**

**A.   UNITED STATES' MOTION FOR RECIPROCAL DISCOVERY**

The United States hereby requests Defendants to deliver all materials to which the United States may be entitled under Federal Rules of Criminal Procedure 16(b) and 26.2.

**IV.**

**CONCLUSION**

For the foregoing reasons, the United States respectfully requests that Defendant's motions be denied where opposed, and that its motion for reciprocal discovery be granted.

DATED:  June 10, 2008.

Respectfully submitted,

KAREN P. HEWITT
United States Attorney


s/ Carlos Arguello

CARLOS ARGUELLO
Assistant U.S. Attorney
Attorneys for Plaintiff
United States of America
Email: Carlos.Arguello2@usdoj.gov