1  KAREN P. HEWITT
   United States Attorney
2  CARLOS ARGUELLO
   Assistant U.S. Attorney
3  California State Bar No. 157162
   United States Federal Building
4  880 Front Street, Room 6293
   San Diego, California  92101
5  Telephone: (619) 557-6252
   Facsimile: (619) 235-2757
6
   Attorneys for Plaintiff
7  United States of America

8                **UNITED STATES DISTRICT COURT**

9               **SOUTHERN DISTRICT OF CALIFORNIA**

10 UNITED STATES OF AMERICA,          )    Criminal Case No. 08cr0303BEN
                                      )
11             Plaintiff,             )    DATE:  September 12, 2008
                                      )    TIME:  2:00 p.m.
12                  v.                )
                                      )    Honorable Roger T. Benitez
13                                    )    Courtroom 3 (4th Floor)
   JUAN ALONSO ROJO-CASTANEDA,        )
14                                    )    UNITED STATES' MOTIONS
               Defendant.             )    IN LIMINE TO:
15                                    )
                                      )    1) ADMIT EXPERT TESTIMONY;
16                                    )    2) ADMIT DEMEANOR EVIDENCE;
                                      )    3) LIMIT CHARACTER EVIDENCE; AND
17                                    )    4) COMPEL DISCOVERY.
                                      )
18                                    )    TOGETHER WITH STATEMENT OF
                                      )    FACTS AND MEMORANDUM OF
19 _____   )    POINTS AND AUTHORITIES

20
            COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through
21
   its counsel, Karen P. Hewitt, United States Attorney, and Carlos
22
   Arguello, Assistant United States Attorneys, and hereby files its
23
   motions in limine in the above-captioned case.  These motions are
24
   based upon the files and records of this case, together with the
25
   attached statement of facts and memorandum of points and authorities.
26

27

28

# I.

## STATEMENT OF FACTS

### A.    PRIMARY INSPECTION AT THE WESTMORLAND CHECKPOINT

On Wednesday, January 9, 2008, at approximately 3:20 a.m., Defendant Juan Alonso Rojo-Castaneda ("Defendant") drove a grey Kenworth tractor trailer bearing California license plates to the fully operational, United States Border Patrol checkpoint on Highway 86 in Westmorland, California. Defendant was hauling an approximately 53-foot semi-trailer. Defendant was the registered owner and sole occupant of the tractor trailer.

United States Border Patrol Agent Freddy Carretero was working at the primary inspection area at the checkpoint when Defendant's tractor trailer approached. The agent asked Defendant routine inspection questions. Defendant, age 32, stated he was a lawful permanent resident of the United States and presented his permanent resident alien card.

The agent then asked Defendant what type of cargo he was transporting. Defendant responded that the trailer was empty and that he was driving to Bakersfield. During this brief questioning, Agent Carretero observed that Defendant appeared extremely nervous. The agent noticed that Defendant seemed fidgety, avoided eye contact, appeared eager to answer questions, and asked to be allowed to continue on his way.

While Agent Carretero spoke with Defendant at the primary area, Border Patrol Agent Vega, a canine handler, was working in the pre-primary inspection area at the checkpoint with his assigned canine. Agent Vega noticed the tractor trailer and had his canine conduct a sniff of both the tractor trailer and semi-trailer. His assigned

1  canine Hoby alerted to the rear doors of the semi-trailer.  At this
2  point, Agent Vega signaled to Agent Carretero to refer Defendant and
3  his truck to the secondary inspection area.  As a result, Defendant
4  was referred to the secondary location.

5  **B.    SECONDARY INSPECTION AT THE CHECKPOINT**

6       In the secondary inspection area, Agent Vega approached
7  Defendant and asked him what he had in the semi-trailer.  Defendant
8  replied that it was empty.  Agent Vega then asked Defendant if he
9  would consent to a search of the semi-trailer.  Defendant consented
10 to a search and opened the rear doors of the semi-trailer.  Agent Vega
11 looked inside the semi-trailer and saw several plastic crates double-
12 stacked together.  Within moments, the canine alerted to the crates.

13 Border Patrol agents eventually removed eighteen (18) bales of
14 packages from within two crates located at the front end of the semi-
15 trailer.  The contents of one of the bales field-tested positive for
16 marijuana.  The gross weight of all the packages was 168 kilograms or
17 369 pounds.  Agents subsequently placed Defendant under arrest for the
18 illegal possession of narcotics.

19 **C.    DEFENDANT'S POST-ARREST STATEMENTS**

20      United States Drug Enforcement Administration Special Agent
21 Richard Slattery and Task Force Officer Pompeyo Tabarez assumed the
22 investigation of this case.  Officer Tabarez advised Defendant of his
23 Miranda rights in the Spanish language with Special Agent Slattery
24 serving as a witness.  Defendant stated he understood his rights and
25 agreed to speak with the agents.

26      Defendant denied knowledge of the marijuana found in his semi-
27 trailer.  Defendant confirmed he owned the tractor trailer.  He told
28 the agents that he worked for Juarez Brothers Trucking in Bakersfield,

California.  He gave the name of David Hernandez as the dispatcher. Defendant claimed that on January 8, 2008, the day before his arrest, he delivered a load of carrots from Grimmway Farms in Bakersfield to the El Centro Cold Storage warehouse in El Centro, California.

Defendant stated that his semi-trailer was unloaded at the storage warehouse at approximately 11:45 p.m.  Thereafter, a forklift operator named "El Gordo" loaded his semi-trailer with empty plastic bins.  Defendant remained inside the tractor trailer during that time and could not see "El Gordo" loading his trailer.

After leaving the storage warehouse, Defendant drove his tractor trailer to Westmorland.  Defendant claimed he intended to drive north to Bakersfield in order to deliver the plastic bins to Grimmway Farms. Defendant drove a distance, took a short nap, and then proceeded to the Westmorland checkpoint.

D.    **FOLLOW-UP INVESTIGATION**

Special Agent Slattery conducted follow-up investigation based on Defendant's statements.  He did the following:

1.    Agent Slattery spoke with Richard Hiura, Director of Processing and Packaging for River Ranch Fresh Foods in El Centro, California.  Mr. Hiura confirmed that River Ranch received a shipment of carrots from Grimmway Farms but it was on January 9, 2008, and the shipment arrived at approximately 11:15 a.m.  He stated shipments of carrots only arrive in the morning hours and not in the evening. Mr. Hiura also added no such person by the name of "El Gordo" worked at their facility.

2.    Agent Slattery obtained a bill of lading from River Ranch Fresh Foods which stated that the January 9, 2008 shipment

1    of carrots was delivered by a driver named Gilbert Ramos
2    and not Defendant.

3    3.    Agent Slattery was informed by River Ranch representatives
4          that they do not load bins into trailers as described by
5          Defendant.    Moreover, River Ranch uses its own semi-
6          trailers to transport carrots, not the personal trailers of
7          the drivers.

8    4.    Agent Slattery spoke with David Hernandez, a dispatcher
9          employed by Juarez Brothers Trucking in Bakersfield,
10         California.    Mr. Hernandez verified Defendant worked for
11         them but had not made any deliveries for them since
12         November 2007.

13                              **II.**

14                    **POINTS AND AUTHORITIES**

15   **A.    EXPERT TESTIMONY**

16   If specialized knowledge will assist the trier-of-fact in
17   understanding the evidence or determining a fact in issue, a qualified
18   expert witness may provide opinion testimony on the issue in question.
19   Fed.R.Evid. 702.  The trial court has broad discretion to admit expert
20   testimony.  See, e.g., United States v. Alonso, 48 F.3d 1536, 1539
21   (9th Cir. 1995).  An expert may base his/her opinion on hearsay or
22   facts not in evidence where the facts or data relied upon are of the
23   type reasonably relied upon by experts in the field.  Fed.R.Evid. 703.
24   In addition, an expert may provide opinion testimony even if it
25   embraces an ultimate issue to be decided by the trier-of-fact.
26   Fed.R.Evid. 704.

27   ///

28   ///

### 1.    Identity of Substance as Marijuana

Unless the parties enter into a stipulation involving the marijuana seized in this case, the Government intends on calling DEA Senior Forensic Chemist, Terry V. Caldwell, to testify as to the identity of the substance seized from the vehicle in this case.  The Government expects him to testify that laboratory examinations confirmed that the contraband was marijuana, a Schedule I Controlled Substance.  This testimony bears directly on an element of the charged offense: that marijuana is a prohibited drug.

This testimony is permitted under Rule 702 of the Federal Rules of Evidence, which allows witnesses qualified as experts to testify as to scientific or technical knowledge that "will assist the trier of fact to understand the evidence."  See United States v. Cruz, 127 F.3d 791, 801 (9th Cir. 1997) (DEA forensic chemist properly established as expert to identify nature of controlled substance); United States v. Burden, 497 F.2d 385, 387 (8th Cir. 1974) (forensic DEA chemist, whose educational background and experience were established, was properly allowed to testify as an expert on the various tests performed on a substance to confirm that it was marijuana).

### 2.    Value of the Drugs

The Government intends to present expert testimony about the quantity, wholesale value, and street value of the marijuana seized in this case.  The quantity and value of the marijuana circumstantially demonstrate that the Defendant knew that the truck he drove contained marijuana, and that the Defendant constructively possessed the marijuana with the intent to distribute it.  Knowledge and intent are elements of the offense charged in this case.

The Ninth Circuit permits the use of such expert testimony.  In United States v. Ogbuehi, 18 F.3d 807, 812 (9th Cir. 1994), for instance, the Defendant was charged with the importation of heroin after he and others attempted to smuggle approximately 2.5 pounds of heroin across the border.  At trial, the Government introduced the expert testimony of a DEA agent as to the street value of the heroin, assuming it had been cut repeatedly and sold on the street.  The Ninth Circuit held that agents can testify to the street value of narcotics and that counsel can argue reasonable inferences from such testimony. See also United States v. Savinovich, 845 F.2d 834, 838 (9th Cir. 1988) (price, quantity, and quality of narcotics is relevant to defendant's intent to distribute).

### 3.  **Personal Use Versus Distributable Amount**

Finally, the Government intends to elicit expert testimony from an Immigration and Customs Enforcement or D.E.A. Special Agent to establish that the quantity of marijuana found in the vehicle driven by Defendant is a distributable, rather than a personal use amount. See United States v. Tavakkoly, 238 F.3d 1062, 1067 (9th Cir. 2001) (undisputed expert testimony that 1.35 kg of opium was inconsistent with possession for personal use was relevant to prove defendant's intent to distribute); United States v. Alatorre, 222 F.3d 1098, 1104-05 (9th Cir. 2000) (expert testimony properly admitted to establish that quantity of marijuana was distributable amount, rather than just personal use amount).

### B.  **DEMEANOR EVIDENCE SHOULD BE ADMITTED**

Evidence regarding a defendant's demeanor and physical appearance is admissible as circumstantial evidence that is helpful to the jury's determination as to whether a defendant knew drugs were concealed in

the vehicle.   Fed.R.Evid. 701; <u>United States v. Hursh</u>, 217 F.3d 761 (9th Cir. 2000) (holding that a jury may consider a defendant's nervousness during questioning at Calexico port of entry); <u>United States v. Fuentes-Cariaga</u>, 209 F.3d 1140, 1144 (9th Cir. 2000) (holding that it is within the ordinary province of jurors to draw inferences from an undisputed fact such as a defendant's nervousness at Calexico port of entry); <u>United States v. Barbosa</u>, 906 F.2d 1366, 1368 (9th Cir. 1990) (holding that a jury could infer guilty knowledge from a defendant's apparent nervousness and anxiety during airport inspection); <u>Unites States v. Lui</u>, 941 F.2d 844, 848 n.2 (9th Cir. 1991) (holding that a jury could consider guilty knowledge from a defendant's acting disinterested during airport inspection).

Here, witnesses for the United States may properly testify to Defendant's demeanor and physical appearance, as they have personal knowledge based upon their observations of Defendant.

## C.   **CHARACTER EVIDENCE**

The Government anticipates that the defense will call character witnesses to testify on behalf of the Defendant.  The Court should limit any such evidence to <u>opinion</u> or <u>reputation</u> testimony about the defendant's general character for lawfulness.   <u>See</u> Fed.R.Evid. 404(a)(1), 405(a), and 803(21); <u>United States v. Diaz</u>, 961 F.2d 1417, 1419-20 (9th Cir. 1992)(district court properly excluded testimony about defendant's "character trait for [not] being prone to large-scale drug dealing").

In introducing positive character evidence, Defendant must restrict himself to evidence regarding "law abidingness" and honesty. Defendant may not introduce evidence concerning specific instances of good conduct, lack of a prior record, or propensity to engage in

specific good acts.  <u>United States v. Hedgecorth</u>, 873 F.2d 1307, 1313

(9th Cir. 1987) ("[W]hile a defendant may show a characteristic for

lawfulness through opinion or reputation testimony, evidence of

specific acts is generally inadmissible.") (citations omitted); <u>United</u>

<u>States v. Barry</u>, 814 F.2d 1400, 1403 (9th Cir. 1987); <u>Gov't of Virgin</u>

<u>Islands v. Grant</u>, 775 F.2d 508, 512 (3d Cir. 1985) ("[T]estimony that

one has never been arrested is especially weak character evidence.").

### D.    <u>UNITED STATES' MOTION FOR RECIPROCAL DISCOVERY</u>

As of the date of the preparation of these motions, Defendant has

produced no reciprocal discovery.  The United States requests that

Defendant comply with Rule 16(b) of the Federal Rules of Criminal

Procedure, as well as Rule 26.2 which requires the production of prior

statements of <u>all</u> witnesses, except for those of Defendant.  Defendant

has not provided the United States with any documents or statements.

Accordingly, the United States will object at trial and ask this Court

to suppress any evidence at trial which has not been provided to the

United States.

### III.

### <u>CONCLUSION</u>

For the foregoing reasons, the Government respectfully

requests that the Court grant its motions <u>in limine</u>.

DATED: September 8, 2008

                                    Respectfully submitted,

                                    KAREN P. HEWITT
                                    United States Attorney

                                        s/Carlos Arguello

                                    CARLOS ARGUELLO
                                    Assistant U.S. Attorney
                                    carlos.arguello2@usdoj.gov